## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,                )<br>                                                              )<br>                    Plaintiff,                         )<br>                                                              )<br>          -vs-                                          )<br>                                                              )<br>REAL PROPERTY LOCATED AT        )<br>186 HOMER TURNBOW ROAD,        )<br>HOHENWALD, TN 38462-5320,          )<br>                                                              )<br>                    Defendant.                       ) | CIV-19-753-R |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America, by its attorneys, Timothy J. Downing, United States

Attorney for the Western District of Oklahoma, and Wilson D. McGarry, Assistant U.S.

Attorney, brings this complaint and alleges as follows in accordance with Supplemental

Rule G(2) of the Federal Rules of Civil Procedure.

## NATURE OF THE ACTION

1.     This is an *in rem* forfeiture action brought to forfeit and condemn to the use

and benefit of the United States of America the above-captioned defendant, (hereinafter

"Defendant"), pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 985(b)(1), and 21 U.S.C. §

881(a)(6), for violations of 18 U.S.C. § 1957 (money laundering), and 21 U.S.C.

§ 841(drug distribution).

## THE DEFENDANT *IN REM*

2.      The Defendant is real property known and numbered as 186 Homer Turnbow Road, Hohenwald, Tennessee 38462-5320, with all appurtenances, improvements and attachments thereon, more particularly described as:

> Being and lying in the Seventh (7th) Civil District of Lewis County, Tennessee on the north side of Homer Turnbow Road, being a portion of the lands of Travis E. Hinson and Krista C. Hinson as shown in the Register's Office of Lewis County in Record Book 50 at page 780, and the lands shown in Deed Book A-86 at page 566, being more particularly described as follows:

> Beginning at a point in the center of Homer Turnbow Road, at the southwest corner of the lands of Krista Hinson as shown in Deed Book A-86 at page 566, thence leaving said road running with the east boundary of the lands of Mark Summers as shown in Record Book 95 at page 788, north *5* degrees 09 minutes 03 Seconds east 30.21 feet to an existing iron pin; thence continuing with the lands of Mark Summers and the east boundary of the lands of Travis Hinson as shown in Record Book 187 at page 370, north *5* degrees 09 minutes 03 seconds east 366.54 feet to a blazed 18 inch oak; thence running with lines of division south 89 degrees 02 minutes 42 seconds east 798.84 feet to an iron pin set; thence south 62 degrees 27 minutes 31 seconds east 329.60 feet to a 22 inch hickory; thence south 8 degrees 48 minutes 15 seconds west 438.45 feet to an iron pin set; thence south 8 degrees 48 minutes 15 seconds west 27.05 feet to a point in the center of Homer Turnbow Road, thence running with the center of said road north 77 degrees *57* minutes 31 seconds west 62.20 feet; thence north 79 degrees 17 minutes 34 seconds west 59.38 feet; thence north 82 degrees 58 minutes 48 seconds west 80.15 feet; thence north 87 degrees 31 minutes 00 seconds west 123.67 feet; thence north 73 degrees 20 minutes 41 seconds west 143.69 feet; thence north 76 degrees 10 minutes 54 seconds west 115.77 feet; thence north *75* degrees 42 minutes 14 seconds

2

west 238.70 feet; thence 80 degrees 23 minutes 39 seconds west 47.07 feet; thence north 87 degrees 02 minutes 18 seconds west for 71.66 feet; thence north 71 degrees 04 minutes 28 seconds west 44.17 feet; thence north 50 degrees 22 minutes 50 seconds west 37.54 feet; thence north 60 degrees 16 minutes 52 seconds west 33.78 feet; thence north 76 degrees 08 minutes 08 seconds west 33.49 feet to the point of beginning, containing 12.449 acres of land, more or less.

3.      The Defendant has not been seized and is within the jurisdiction of the Court. The purchasers of record are Thomas Thibeault and Christinna Thibeault, pursuant to a Warranty Deed recorded on February 11, 2019, in the records of the County Clerk of Lewis County, Tennessee.

4.      The United States does not request authority from the Court to seize the Defendant at this time. The United States will, as provided by 18 U.S.C. §§ 985(b)(1) and (c)(1):

    a.      post notice of this action and a copy of the Complaint on the real property, and

    b.      serve notice of this action on the real property's owner, and any other person or entity who may claim an interest in the real property, along with a copy of this Complaint, and

    c.      request and execute a writ of entry for purposes of conducting an inspection and inventory of the real property, and

    d.      file a lis pendens in county records of the real property's status as a defendant in this *in rem* action.

5.      The United States will also appraise the value of the Defendant when it executes the Writ of Entry.

## JURISDICTION AND VENUE

6.      The United States brings this action *in rem* in its own right to forfeit and condemn the Defendant pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 985(b)(1), and 21 U.S.C. § 881(a)(6).   This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

7.      This Court has *in rem* jurisdiction over the Defendant under 28 U.S.C. § 1355(b) and 28 U.S.C. § 1395.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395, because action accrued in this district or the criminal defendant was found in this district, giving rise to this forfeiture action.

## BASIS FOR FORFEITURE

9.      The Defendant is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 985(b)(1) and 21 U.S.C. § 881(a)(6).   The United States alleges that the Defendant is any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity.   The United States further alleges that the Defendant is any money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; that the Defendant constitutes proceeds traceable to such an exchange; that the Defendant constitutes money, negotiable instruments, and securities used or intended to be used to facilitate a violation of the

4

Controlled Substances Act.   All in violations of 18 U.S.C. § 1957 (money laundering) and 21 U.S.C. § 841(drug distribution).

## FACTS

10.     The facts and circumstances supporting the forfeiture of the Defendant are contained in the supporting affidavit attached hereto as Attachment 1, and fully incorporated herein.

11.     This complaint does not contain all of the information known in regards to the investigation; however, it contains enough information to establish probable cause to support a complaint for forfeiture against the Defendant.

## CLAIM FOR RELIEF

12.     As a result of the foregoing, the Defendant is liable to condemnation and to forfeiture to the United States for its use, in accordance with 18 U.S.C. §§ 981(a)(1)(C) and 985(b)(1), and 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States requests that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant; that the Defendant be forfeited and condemned to the United States of America; that the United States be awarded its costs and disbursements in this action; and the Court order any such other and further relief as this Court deems proper and just.

Respectfully submitted,

TIMOTHY J. DOWNING
United States Attorney


/s/ *Wilson D. McGarry*
WILSON D. McGARRY
Assistant U.S. Attorney
Oklahoma Bar No. 31146
210 Park Ave., Suite 400
Oklahoma City, OK 73102
Telephone:   (405) 553-8700
Telecopier:   (405) 553-8885
E-mail:   wilson.mcgarry@usdoj.gov

AFFIDAVIT IN SUPPOPRT OF FORFEITURE

WESTERN JUDICIAL DISTRICT       )
OF OKLAHOMA                                 )

Your Affiant, Larry Morgan, being duly sworn, deposes and says:

I have probable cause to believe that the property listed below is subject to forfeiture according to (1) Title 18, United States Code, Sections 981 and 982, as property, real or personal, which constitutes or is derived from proceeds traceable to money laundering transactions and property involved in money laundering transactions, in violation of Title 18, United States Code, Section 1957 and (2) Title 21, United States Code, Sections 853 and 881, as proceeds of illegal drug distribution, in violation of Title 21, United States Code, Section 841. The property subject to forfeiture is:

1. Real property in Lewis County Tennessee, more particularly described as:

   Being and lying in the Seventh (7th) Civil District of Lewis County, Tennessee on the north side of Homer Turnbow Road, being a portion of the lands of Travis E. Hinson and Krista C; Hinson as shown in the Register's Office of Lewis County in Record Book 50 at page 780, and the lands shown in Deed Book A-86 at page 566, being more particularly described as follows:

   Beginning at a point in the center of Homer Turnbow Road, at the southwest comer of the lands of Krista Hinson as shown in Deed Book A-86 at page 566, thence leaving said road running with the east boundary of the lands of Mark Summers as shown in Record Book 95 at page 788, north 5 degrees 09 minutes 03 Seconds east 30.21 feet to an existing iron pin; thence continuing with the lands of Mark Summers and the east boundary of the lands of Travis Hinson as shown in Record Book 187 at page 370, north 5 degrees 09 minutes 03 seconds east 366.54 feet to a blazed 18 inch oak; thence running with lines of division south 89 degrees 02 minutes 42 seconds

1

east 798.84 feet to an iron pin set; thence south 62 degrees 27 minutes
31 seconds east 329.60 feet to a 22 inch hickory; thence south 8
degrees 48 minutes 15 seconds west 438.45 feet to an iron pin
set; thence south 8 degrees 48 minutes 15 seconds west 27.05 feet
to a point in the center of Homer Turnbow Road, thence running with
the center of said road north 77 degrees *57* minutes 31 seconds west
62.20 feet; thence north 79 degrees 17 minutes 34 seconds west
59.38 feet; thence north 82 degrees 58 minutes 48 seconds west
80.15 feet; thence north 87 degrees 31 minutes 00 seconds west
123.67 feet; thence north 73 degrees 20 minutes 41 seconds west
143.69 feet; thence north 76 degrees 10 minutes 54 seconds west
115.77 feet; thence north *75* degrees 42 minutes 14 seconds west
238.70 feet; thence 80 degrees 23 minutes 39 seconds west 47.07
feet; thence north 87 degrees 02 minutes 18 seconds west for 71.66
feet; thence north 71 degrees 04 minutes 28 seconds west 44.17 feet;
thence north 50 degrees 22 minutes 50 seconds west 37.54 feet;
thence north 60 degrees 16 minutes 52 seconds west 33.78 feet;
thence north 76 degrees 08 minutes 08 seconds west 33.49 feet to
the point of beginning, containing 12.449 acres of land, more or less.

(hereinafter referred to as the "Real Property").

## I.    INTRODUCTION

I am an agent with the Oklahoma Bureau of Narcotics ("OBN"). I am a Law
Enforcement Officer as defined by 13 O.S. §176.2 (10). I am currently employed by the
Oklahoma State Bureau of Narcotics and Dangerous Drugs Control as a full-time peace
officer and narcotic agent; and have been so employed since July 2005. Prior to that
employment, I was a Criminal Investigator with the Federal Treasury Department for 26
years and specialized in money laundering and illegal drug conspiracies.

During my employment with the OBN and the United States Treasury, I received
training in search and seizure law, asset forfeiture and money laundering investigation
provided by the Association of Oklahoma Narcotic Enforcers (AONE), C.L.E.E.T, OBN,
Internal Revenue Service, Federal Bureau of Investigation and Drug Enforcement
Administration in relation to the investigation of illegal drug offenses. I have conducted

and participated in numerous criminal investigations to include working in an undercover capacity, which have resulted in the arrest and conviction of individuals involved in the substantive and conspiratorial distribution or production of controlled substances and laundering of the drug proceeds. In this capacity, I have learned about the common practices of drug distributors and traffickers, including their methods and modes of transportation, distribution, finances, security, and day-to-day activities. I have personally conducted numerous investigations of controlled dangerous substance violations. This experience includes physical surveillance, both consensual and court-authorized electronic surveillance of illegal drug activities, the execution of evidentiary search warrants for controlled substances and illegal drug documentation. I have interviewed numerous distributors and traffickers of illegal controlled dangerous substances, admitted drug users and informants, and have consulted with other narcotics investigators and enforcement officers who have experience in narcotics investigations.

During my 40 year experience as a criminal investigator I have testified as an expert in money laundering in three federal judicial districts. I have been responsible for the seizure and subsequent forfeiture in millions of dollars associated with criminal activity.

Based on my training and experience I know that drug dealers generate tremendous profits from their illegal activities. Very often, individuals place assets in names other than their own and maintain residence in names other than their own to avoid detection of themselves and/or assets by law enforcement officials. When drug dealers accumulate profits from the sale of these drugs, they frequently try to legitimize those profits. In order to accomplish this, they utilize foreign and domestic banks, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate (such as the properties described in this affidavit), and business fronts. Even though those residences and/or assets are in other persons' names, the drug dealers continue to use those residences and/or assets and exercise dominion and control over them. Large-scale drug dealers must maintain on hand large amounts of United States currency in order to maintain and finance their ongoing drug business, and they sometimes use/print counterfeit money to exchange for drugs. Drug dealers are more likely to display evidence of wealth that is unexplained

3

and/or unsupported by legitimate sources of income. The courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed; in particular, trafficking in controlled substances.

## II.    THE CRIMINAL INVESTIGATION

### Shawn Thibeault

The OBN and other law enforcement agencies are investigating Shawn Michael Thibeault ("Thibeault") and property he may own or have an interest in that is linked to his criminal conduct after officers conducted a traffic stop on the vehicle he was driving and found him in possession of twenty five (25) kilograms of cocaine. Thibeault has a significant criminal history. Thibeault has previously been charged with felony assault and battery, for assaulting a police officer, and for escape from a prison. The twenty five (25) kilograms of cocaine found in the car he was driving is worth approximately $500,000 on the street. The investigation to-date reflects that any substantial amount of currency in possession of Thibeault would be generated from illegal narcotics sales based on Thibeault's lack of employment or other sources of income that would provide a legitimate explanation for him being in possession of large amounts of U.S currency[1]. The fact that Thibeault has engaged in significant narcotics scales is demonstrated by the drugs and drug ledger found in his car, as well as additional data on cell phones and other electronic devices found in his possession.

### The Traffic Stop

On February 8, 2019, Thibeault was stopped for a traffic violation by OBN Interdiction Agent Nathan Hartsburg. Agent Hartsburg conducted a routine database check and discovered that Thibeault had an active outstanding warrant from the state of Montana. As a result, Agent Hartsburg placed Thibeault in custody. Because Thibeault was the sole occupant of the vehicle, Agent Hartsburg conducted an inventory search of the vehicle.

---

[1]    The investigation has shown that Thibeault has received some legitimate income (approximately $1,500.00 every two weeks), but nothing that would justify the substantial sums of money he has possessed.

During the search of the vehicle, Agent Hartsburg found twenty five (25) kilograms of a substance which fielded tested positive to be cocaine. Based on the Affiant's training and experience, twenty five (25) kilograms of cocaine has a street value in exceess of $500,000. In addition, Agent Hartsburg discovered drug ledgers that reflect drug transactions worth more than $700,000. Thibeault was arrested by the state agents for drug trafficking.

Subsequent investigation by Homeland Security Investigations has revealed additional information confirming Thibeault's significant drug trafficking activities. Agents obtained search warrants for Thibeault's cell phones, USB devices and laptop computer. Electronic drug ledgers were discovered on some of these electronic devices. In addition, communications to and from Thibeault on these phones confirm his involvement in additional drug trafficking activity. For instance, on one of the phones seized from Thibeault at the time of his arrest, he received a message from which provided as follows:

> K. After the last from D we are at 2M. You also have your credit coming with P. Just keep your spreadsheet updated and add your Mo. Thinking you should be able to get 22 23

Thibeault responded to that message a few minutes later with the following:

> Made two trips now making third ! With the 390 got 15 so now have 450 plus 150 minus some expenses ten for for t and about another ten for rents and travel ! So 580 is totals this trip ! So getting 22.

Based on my experience, the messages above reflects Thibeualt's acquisition of cocaine on multiple prior occasions. I believe the phrase "390,00 got 15" is a reference to acquiring 15 kilograms of cocaine for $390,000, which equates to $26,000 per kilogram, an amount consistent with approximate current wholesale cocaine prices. I believe the phrase "580 is totals this trip! So getting 22" is Thibeault's reference to getting at least 22 kilograms of cocaine for $580,000, which again is approximately $26,363 per kilogram. Moreover, this message, sent on January 31, 2019, reflects Thibeault's attempting to arrange a purchase of approximately 22 kilograms of cocaine, close to the 25 kilograms of cocaine he was arrested with on February 8, 2019 in this case.

Following his arrest, state charges were filed in Canadian County while federal charges were simultaneously being sought in the Western District of Oklahoma. A Canadian County, Oklahoma Judge established a state bond for Thibeault of $100,000. Thibeault's sister, Christinna Thibeault, bonded Shawn Thibeault out of jail by using the Real Property, which is located in Lewis County, Tennessee, for collateral. I began an investigation of the ownership of the Real Property.

**The Real Property**

The warranty deed (also referred to as the "deed"), which was obtained from public records in Lewis County, Tennessee, for the Real Property shows that the owners of the property are Thomas Thibeault and Christinna Thibeault. I know through this investigation that they are the brother and sister of Shawn Thibeault. The deed shows that the Real Property was purchased in August 2018. However, records show that it was not registered with Lewis County Clerk's Office until February 11, 2019, three days after Thibeault was arrested by OBN agents.

On April 26, 2019, I interviewed Travis Hinson ("Hinson"). Hinson is shown on the deed as conveying the Real Property to Thomas Thibeault and Christinna Thibeault. However, Hinson stated that he negotiated and sold the Real Property to Shawn Thibeault in August 2018. He stated that he knew that Thibeault did not register the Real Property immediately. Hinson was charged for the property tax for the year 2018 because he was still the owner of record at Lewis County Clerk's office. Hinson stated that all negotiations for the Real Property and all payments received involved only Shawn Thibeault. Hinson did meet Thomas Thibeault and Christinna Thibeault, however, Shawn Thibeault was who he sold the Real Property to and from whom he received payments.

Hinson stated that he sold the Real Property for $290,000 to Thibeault. According to Hinson, Thibeault wanted to pay Hinson via personal check, but Hinson would not accept a personal check. Hinson agreed to accept payment of the $290,000 via wire transfer.

Hinson stated that over a few months Thibeault arranged wire transfers to pay for the Real Property. At my request, Hinson went to People's Bank in Clifton, Tennessee, and obtained copies of wire transfers he received at his bank to pay for the Real Property. According to the copies of the bank records, the wire transfers show as follows:

1. The first wire transfer occurred on May 24, 2018 in the amount of $100,000. The wire was sent from Bank of America ("BOA") account number ending in 0965 in the name Shawn Thibeault;

2. The second wire transfer occurred on July 23, 2018 in the amount of $100,000. The wire was sent from BOA account number ending in 0965 in the name Shawn Thibeault;

3. The third wire transfer occurred on August 15, 2018 in the amount of $90,000. The wire was sent from BOA account number ending in 0965 in the name Shawn Thibeault.

In total, Hinson received $290,000.00 from Shawn Thibeault to pay for the Real Property by wire transfer from Thibeault's BOA account number ending in 0965. I began investigating the source of the funds used to fund these three wire transfers to Hinson. My investigation revealed that Thibeault funded these three wire transfers to Hinson by arranging for wire transfers into his BOA account through Barry Gordon ("Gordon") and his wife and business partner, Kathy Helton ("Helton").

**The Source of Funds Used to Purchase the Real Property**

When Thibeault was stopped on February 8, 2019 with the 25 kilograms of cocaine, he was driving a car that was registered to Barry Gordon. I interviewed Gordon and his wife, Helton, in May 2019. They stated that they became acquainted with Thibeault when they sold him three different properties they owned during 2018.

With respect to the wires used to purchase the Real Property, my investigation has revealed the following. Helton reported that at Thibeault's request, she arranged for wire transfers from her account at Franklin Synergy Bank into Thibeault's BOA account ending in 0965.

On May 21, 2019, records were obtained from Franklin Synergy Bank. These records show the wire transactions discussed below and the currency deposits made by Helton.

I also obtained BOA records documenting the wire transfers initiated by Helton from Franklin Synergy Bank. In sum, these records show wires from Helton's Franklin Synergy Bank into Thibeault's BOA account ending in 0965 and then corresponding wires from Thibeault's BOA account to Hinson's People's Bank account to pay for the Real Property.

Except for the first point below, the following analysis of the wire transfers from Helton to Thibeault and Thibeault to Hinson are based on my interview of Helton, Hinson, and Gordon along with my review of documents secured by the government from Franklin Synergy Bank, BOA, Hinson, and Helton:

1. On May 24, 2018, Helton wired Thibeault $100,000 to his BOA account ending in 0965. BOA records reflect Thibeault transferred out $100,000 the same day to Hinson. Helton told me that the source of the money for the wire transfer was cash that Thibeault gave to her and which she then deposited into her account at Franklin Synergy Bank.

2. On July 20, 2018, Helton wired Thibeault $103,360 to his BOA account ending in 0965. BOA records reflect Thibeault transferred out $100,000 three days later, on July 23, 2018, to Hinson. Helton told me that the source of the money for the wire was cash that Thibeault gave to her and which she then deposited into her account at Franklin Synergy Bank. The Franklin Synergy Bank records reflect a cash deposit on June 6, 2018, of $100,040.

3. On August 14, 2018, Helton wired Thibeault $100,000 to his BOA account ending in 0965. BOA records reflect Thibeault transferred $90,000 the next day, August 15, 2018, to Hinson. Helton told me that the source of the money for the wire was

cash that Thibeault gave to her and which she then deposited into her account at Franklin Synergy Bank. The Franklin Synergy Bank records reflect a cash deposit on August 13, 2018 of $100,100.

4.  On November 6, 2018, Helton wire transferred $90,000 to Thibeault's BOA account ending in 8439, not 0965. BOA records indicate the money was used to pay credit card debt and various other miscellaneous purchases. Documents reflect the source of the funds for the wire was $90,000 in cash that was deposited November 5, 2018 by Helton from her Franklin Synergy Bank account. The currency was provided to her by Thibeault.

On June 13, 2019, I re-interviewed Gordon and Helton. Gordon stated that Gordon and Helton were paid $25,000 in cash by Thibeault in exchange for executing each wire transfer to Thibeault's bank. Both Helton and Gordon admitted that they were paid $100,000 in total to take the cash provided to them by Thibeault and wire that money to Thibuealt so that he could use that money to purchase the Real Property and make other purchases and/or pay additional expenses.

In my training and experience, drug traffickers with large amounts of cash will take steps to avoid triggering bank reporting requirements and to avoid having real property or other assets in their own names. Thibeault's refusal to register the Real Property in his own name, leaving it in Hinson's name and allowing his brother and sister to later claim ownership of the property in order to use it as collateral for his bond is consistent with such efforts to avoid criminal or civil forfeiture proceedings. Moreover, Thibeault's efforts to provide cash to Helton, rather than depositing it directly into his own account at BOA are consistent with an effort to avoid bank reporting requirements. Those engaged in illegal activities often act to avoid triggering such reporting requirements in accounts associated with their own name in order to avoid government scrutiny. Structuring the cash deposits to avoid having them go straight into Thibeault's own BOA account (and paying $100,000 to someone just for arranging these wires) is consistent with money laundering activity and

9

reflects that the cash was involved in money laundering and that the source of the cash was generated by illegal activity, likely drug trafficking, rather than from some other lawful source of income.

## IV.   CONCLUSION

Based on the above information, I believe there is probable cause that the aforementioned Real Property is subject to forfeiture according to (1) Title 18, United States Code, Sections 981 and 982 as property, real or personal, which constitutes or is derived from proceeds traceable to money laundering transactions and property involved in money laundering transactions, in violation of Title 18, United States Code, Section 1957 and (2) Title 21, United States Code, Sections 853 and 881, as proceeds of illegal drug distribution, in violation of Title 21, United States Code, Section 841.

Further, your Affiant sayeth not.


_Larry Morgan_
Larry Morgan
Agent
Oklahoma Bureau of Narcotics


Subscribed and sworn to before me this 16th day of August, 2019.

_Terri L. Celestine_
NOTARY PUBLIC

My Commission Expires:

_2/8/22_

10

**VERIFICATION**

I, Larry Morgan, hereby verify and declare under penalty of perjury that I am an Agent with the Oklahoma Bureau of Narcotics, that I have read the foregoing Verified Complaint of Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true of my own knowledge, except those matters therein stated to be alleged on information and belief and as to those matters, I believe them to be true. The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on August ___ *16*___, 2019.

_Larry Morgan_____
Larry Morgan, Agent
Oklahoma Bureau of Narcotics

Attachment 2

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| UNITED STATES OF AMERICA | Real Property located at 186 Homer Turnbow Road Hohenwald, TN 38462-5320 |

**(b)**   County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*
Wilson D. McGarry, Assistant U.S. Attorney
United States Attorney's Office
210 Park Ave., Ste. 400, Oklahoma City, OK 73102

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
       Plaintiff

☐ 2   U.S. Government
       Defendant

☐ 3   Federal Question
       *(U.S. Government Not a Party)*

☐ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                   *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury  - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
       Proceeding

☐ 2   Removed from
       State Court

☐ 3   Remanded from
       Appellate Court

☐ 4   Reinstated or
       Reopened

☐ 5   Transferred from
       Another District
       *(specify)*

☐ 6   Multidistrict
       Litigation -
       Transfer

☐ 8   Multidistrict
       Litigation -
       Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title 18, United States Code, Section 981(a)(1)(C) and Title 21, United States Code, Section 881(a)(6)
Brief description of cause:
Defendant property constitutes or is derived from proceeds of a controlled substance

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
   UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
08/16/2019

SIGNATURE OF ATTORNEY OF RECORD
s/Wilson D. McGarry, Assistant U.S. Attorney

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

| Print | Save As... | Reset |